UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| M.M. and ASHLEY MCDOWEL | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. |
| THE UNITED STATES OF AMERICA | § § | |
| Defendant | § § | |
| ———————————————— | § | |

## COMPLAINT FOR DAMAGES
## UNDER THE FEDERAL TORT CLAIMS ACT

M.M. and ASHLEY MCDOWEL, Plaintiffs, by and through their attorneys, Carpenter & Czelusta, PLLC, now come before this Court and complain of and sues the UNITED STATES OF AMERICA (Hereinafter referred to as "Defendant"), as follows:

### JURISDICTION, VENUE, PARTIES,
### AND CONDITIONS PRECEDENT

1.    This lawsuit arises out of negligent medical care and treatment rendered by the Defendant, to     M.M.     , causing her to suffer permanent and catastrophic neurologic injury.

2.     This Court further has subject matter jurisdiction under 28 U.S.C. §§1346(b)(1) because the claims herein are brought against the United States pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, et seq.) for money damages as compensation for personal injuries that were caused by the negligent and wrongful acts and omissions of employees of the Defendant while acting within the scope of their offices and employment, under circumstances where the Defendant, if a private person, would be liable to the Plaintiffs.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the events or omissions giving rise to the claims occurred or a substantial part of the acts and omissions forming the basis of these claims occurred in Hillsborough County, Florida, which is located within the Middle District of Florida.  The Tampa Division of this District Court is most directly connected to this action and where the action will be most conveniently advanced.

4.     ASHLEY MCDOWEL is the mother and legal guardian of  M.M. _ .. _ _ who at the time of these events was two (2) years old. They reside at 14035 Abaco Isle Drive, Orlando, FL 32824, which is within this District.

5.     At all times material, the physicians and health care providers providing care and treatment to  M.M.    _     , including Robert Lewis, M.D.; James J. Tschudy, M.D.; Robert Gonzalez, D.O.; and the patient care personnel of the United States Air Force MacDill Air Force Base 6th Medical

Group, located at  located at 8208 Hangar Loop Drive, Tampa, Florida 33621,
were employed by the Defendant to provide medical care and treatment to its
patients including ¨ M.-M.                              ._.

6.      At all times material, the physicians and health care providers
employed by the Defendant and providing care and treatment to M.M. ¯.
        ⌐ including Robert Lewis, M.D.; James J. Tschudy, M.D.; Robert
Gonzalez, D.O.; and the patient care personnel United States Air Force MacDill
Air Force Base 6th Medical Group; were acting within the course and scope of
their employment with the Defendant.

7.      Plaintiffs have fully complied with the provisions of 28 U.S.C.
§2675 of the Federal Tort Claims Act.

8.      Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et. seq.,
all conditions precedent to this lawsuit have been fulfilled, in that Plaintiffs
timely served notice of their claims on the Defendant in January 2020.
Thereafter, the U.S. Department of the Air Force assumed responsibility for
processing the claim.  On January 13, 2020, correspondence was received from
it denying the claim.

9.      Undersigned counsel hereby certifies, pursuant to section 766.104,
Florida Statutes, that they have undertaken a reasonable investigation that has

given rise to a good faith belief that reasonable grounds exist for this medical negligence action against the Defendants named herein.

10.   Further, Plaintiffs, through undersigned counsel, have fully complied with section 766.106, Florida Statutes, and all conditions precedent to maintaining this action for medical negligence.

11.   All other conditions precedent have either been met or otherwise waived.

12.   This action is timely pursuant to 28 U.S.C. § 2401(b) in that it was presented to the appropriate federal agency within two years of accrual and this action was filed within six months of receipt of the certified letter sent by the federal agency denying the claim.

## FACTUAL BASIS

13.   This cause of action arose on or about May 27, 2019, when   M.M.'S injuries began as a result of the negligence of those providing medical care to her at the MacDill Air Force Base, 6th Medical Group.

14.      M.M.                  ., who at the time of the events leading to this lawsuit was two (2) years old, was a full term and healthy infant at birth, and at all times material, she remained healthy up to the point in time where she suffered injuries as a result of the negligence of the Defendant as described herein.

15.     M.M.         .     established pediatric primary care at MacDill Air Force Base, 6th Medical Group on or around March 3, 2017, when she presented for her newborn visit. She was noted to be healthy and meeting milestones as expected.

16.     At her four-month checkup on or around June 29, 2017,  M.M. was seen by James J. Tschudy, M.D., who identified that she had eczema that could be "triggered by cow's milk protein sensitivity. Continue to avoid milk products." ‾    M.M.'S _ _       : parents indicated that they wanted to discuss formula options for her because she vomits immediately after taking most formulas and refused others.

17.     On September 6, 2017, ‾     M.M. · ‾     , presented for her six-month checkup to Dr. Tschudy, who noted no allergies but the diagnosis of eczema. He noted ASHLEY MCDOWEL was feeding M.M. 80% rice milk formula and breastmilk, and that ‾     M.M.      .. __  was refusing "hypoallergenic" formulas and "vomits violently with cow's milk based formulas." Dr. Tschudy did not note any allergies on this visit but stated that an attempt at IgE testing would be made to "[s]ee if there are any dietary contributors apart from cow's milk." At this point, ‾     M.M.        ... was noted to be meeting her normal developmental milestones.

18.   Immunoglobulin E (IgE) testing is an evaluation for suspected diseases associated with elevations in total immunoglobulin E (IgE), including allergic disease.

19.   IgE testing on September 25, 2017, revealed that M.M. had "very strong reactions" to some foods, to include milk, egg yolk, peanut, rye, oat, and barley.  The recommendation was that "[f]or now, Mom should limit cow's milk and peanuts in her own diet since she is still breastfeeding." The results were purportedly conveyed by a nurse to ASHLEY MCDOWEL and not by Dr. Tschudy, however these results were documented in the Defendant's medical record for  M.M.

20.   Although ASHLEY MCDOWEL complied with the dietary recommendations contained in the September 25, 2017, IgE testing results, she had an ongoing struggle to find a suitable replacement for cow's milk in  M.M.'S diet and reasonably relied upon the advice and counseling of the Defendant in this regard.

21.   On or around November 30, 2017, based on the aforementioned IgE results, Dr. Tschudy noted a likelihood that  M.M.  had "true food allergies" and referred her to an allergist to help "better delineate foods allergies and manage eczema."

22.    On January 10, 2018 allergist Patricia Jerez-Martin, M.D., evaluated          M.M.          , and noted diagnoses to include food allergies to milk, egg wheat, rye, barley, oats, and peanuts. Her plan of care for ⁻M.M. included EpiPen, Benadryl, and avoidance of milk/dairy. A follow up for 3-4 weeks to review lab results was scheduled.  A record of this visit is contained in the Defendant's medical record for ⁚ M.M.

23.    On or around March 14, 2018, Dr. Jerez-Martin again saw ___ , in consultation. Dr. Jerez-Martin noted that the allergies of milk, egg, gluten (wheat, rye, barley) oats, peanuts and tree nuts persisted. The plan of care was avoidance of allergens and EpiPen with follow up in four months or sooner.

24.    On May 21, 2018, a "Special Care Action Plan" was submitted to MacDill Air Force Base Child Development Center on behalf of    M.M. ＿. This form required safety information pertaining to M.M. , to be filled out by the Defendant's medical personnel. However, critical areas are altogether omitted or empty, including the section requiring a signature for parents' education. This form was never presented by MacDill Air Force Base personnel to either of          M.M.'S          ＄ parents.

25.    On May 30, 2018, ASHLEY MCDOWEL called the MacDill Air Force Base 6th Medical Group clinic for a scheduled visit and processing of Exception Family Member Program (EFMP) paperwork.

26.    The EFMP is a program designed to assist Air Force family members diagnosed with physical conditions that require ongoing medical services.    It is intended to enhance accessibility for individuals with medical requirements to needed medical services.    At all times material,  M.M. , qualified for EFMP due to her severe allergies.   Enrollment in EFMP would have allowed for enhanced accessibility to medical services and counseling needed to address    M.M.'S     medical needs due to her known severe allergies.   This would have included accessibility to medical case management and patient education.

27.    ASHLEY MCDOWEL was purportedly informed that   M.M.   needed a well visit in order to complete her paperwork that was dropped off at the clinic.  The Defendant's staff member noted on May 30, 2018, that the EFMP paperwork needed to initiate her enrollment in the program was completed and would be returned at     M.M.'S     next well visit.

28.    EFMP paperwork was withheld from ASHLEY MCDOWEL, depriving   M.M.   of her right to access special needs assistance, including medical case management and patient education.

29.    On June 11, 2018, ` ¨     M.M.        ¨¨¨¨ presented to the MacDill

Air Force Base 6th Medical Group clinic for a fever and ear infection. She was

noted to have a decreased appetite with vomiting and diarrhea. Dr. Christopher

Wilke MD noted that she did not have a case manager and that she was not

enrolled in an EFMP. It was noted during this visited that "she has only been

dx'd with cow's milk, egg, gluten, oat, peanut, and tree nut allergies."

30.    On June 15, 2018,      M.M.          , presented for a follow up

for an allergic reaction after an admission to St. Joseph's Hospital and for a 15

month well visit with Dr. Tschudy.  Dr. Tschudy noted       M.M.

was still not enrolled in an EFMP and that she did not have a case manager. Dr.

Tschudy noted that "[w]e informed [ASHLEY MCDOWEL] that we could not

complete the forms without a well visit as she had not had once [sic] since 6

months."

31.    ASHLEY  MCDOWEL  brought       M.M.           to  the

Defendant's MacDill Air Force Base 6th Medical Group Clinic multiple

additional times after the June 15, 2018 visit, and not one of the Defendant's

employed physicians or staff persons presented ASHLEY MCDOWEL with the

correct paperwork for enrolling in EFMP notwithstanding the fact that she had

met all requirements and prerequisites for enrollment thereby denying her access

to  services,  including  a  case  manager  and  proper  and  condition  specific

education.  At this same time, it was documented by Dr. Tschudy that she had multiple exposures to foods containing allergens causing significant reactions and requiring the use of an Epi Pen.  At this same time, it was noted that she continued to meet developmental milestones and was developing normally.

32.   On July 12, 2018,        M.M.          again presented to the Defendant's MacDill Air Force Base 6th Medical Group Clinic, this time for a swollen lymph node. At this time, it was again recognized that she was still not enrolled in EFMP, she remained without a case manager, and that she remained with significant food allergies, including milk, with a history of anaphylaxis.

33.   On July 19, 2018,        M.M.          again presented to the Defendant's MacDill Air Force Base 6th Medical Group Clinic for follow up for the swollen lymph node. It was noted that she was still not enrolled in EFMP and also did not have a case manager. It was also documented that the patient "doesn't like milk" despite a thoroughly documented milk allergy.

34.   On August 1, 2018,       M.M.          presented again to the MacDill Air Force Base 6th Medical Group clinic for fever and swollen lymph nodes. Again, it was noted, this time by Dr. Robert Lewis, that she was still not enrolled in EFMP and also did not have a case manager notwithstanding the continued notation of multiple food allergies and a history of anaphylaxis.

35.  On August 14, 2018,        M.M.            , presented again to the MacDill Air Force Base 6th Medical Group clinic for a rash on her back. Dr. Robert Gonzalez evaluated        M.M.          _ and noted that she was still not enrolled in EFMP and also did not have a case manager notwithstanding the continued notation of multiple food allergies and a history of anaphylaxis.  Dr. Gonzalez diagnosed impetigo and a urinary tract infection.

36.  On August 29, 2018,        M.M.           presented again to the MacDill Air Force Base 6th Medical Group clinic for a cough/wheezing. Dr. Gonzalez again evaluated her and again noted that she was still not enrolled in EFMP and also did not have a case manager notwithstanding the continued notation of multiple food allergies and a history of anaphylaxis.  Dr. Gonzalez diagnosed her with pneumonia and sent her home with a Zithromax prescription.

37.  On October 31, 2018,        M.M.            presented to the MacDill Air Force Base 6th Medical Group Clinic for a low-grade fever with a runny nose and cold symptoms. She was seen by Dr. Robert Lewis who noted that she was still not enrolled in EFMP and also did not have a case manager notwithstanding the continued notation of multiple food allergies and a history of anaphylaxis.  Dr. Lewis diagnosed her with a cold and prescribed Zyrtec.

38.    On December 20, 2018,       M.M.       presented to the MacDill Air Force Base 6th Medical Group clinic for a runny nose and cough. At that time, she was still not enrolled in EFMP and also did not have a case manager.       M.M.       was diagnosed as having an upper respiratory infection and otitis media in the right ear, and prescribed Zithromax. There remained no action on the failure to enroll her in EFMP or to assign a case manager related to her continued severe food allergies.

39.    On March 11, 2019,       M.M.       again presented to the MacDill Air Force Base 6th Medical Group clinic and was evaluated by Dr. Robert Gonzalez for a 24 month well check. At that time, allergy testing was requested by her father. Dr. Gonzalez ordered eosinophilic esophagitis SCR, gluten IGE, and tree nuts panel laboratory testing. The results of these tests were not presented to her allergist. She was still not enrolled in EFMP and also did not have a case manager notwithstanding the continued notation of multiple food allergies and a history of anaphylaxis. She was noted to be growing and developing appropriately.

40.    On April 3, 2019,       M.M.       again presented to the MacDill Air Force Base 6th Medical Group clinic and was evaluated by Dr. Robert Lewis for possible cold symptoms. Dr. Lewis diagnosed her with acute bronchospasm and renewed her referral to an allergist. There is no record of this

referral in any other medical records, including the allergist's records. The allergy diagnosis vaguely referred to "allergy to other foods." Dr. Lewis again noted that **M.M.** was not enrolled in an EFMP and did not have a case manager.

41.   Additionally, during this April 3, 2019, visit to the Defendant's clinic, ASHLEY MCDOWEL asked for a specific allergist. Dr. Lewis stated that she should call Tricare and obtain the referral through the referral center. ASHLEY MCDOWEL also requested dietary supplements for **M.M.** for calcium and Vitamin D, because of her child's allergies. During this visit, Dr. Lewis stated, "Since **M.M.** is allergic to cow's milk, you can get camel's milk or goat's milk. The calcium content is higher. You can order it online."

42.   On April 29, 2019, **M.M.** presented to MacDill Air Force Base 6th Medical Group clinic and was evaluated by Dr. Robert Gonzalez. The reason for the visit was "ongoing cough/meds not working." Gonzalez noted that she was non-toxic looking and discharged her without limitations. **M.M.** still was not enrolled in EFMP and also continued to be without a case manager.

43.   Throughout **M.M.'S** multiple visits to the MacDill Air Force Base 6th Medical Group clinic, no education was noted to have been

performed on diet, nutrition, or allergy counseling. Insufficient referrals were made to an allergist even though she suffered from severe food allergies. Though a referral was renewed in April 2019 to an allergist, M.M. should have had ongoing visits to the allergist and renewed by the Defendant on a regular basis rather than at the belated request of her parents.

44.   On May 27, 2019, and at the instruction and assurance of the Defendant's staff and physicians as previously described, and without the benefit of reasonable medical counseling, advice, and case management, ASHLEY MCDOWEL bought goat's milk for M.M. and fed it to her at approximately 5:00 PM.

45.   Shortly after 5:00 PM on May 27, 2019, and after ingesting goat's milk, M.M. experienced a severe anaphylactic reaction. ASHLEY MCDOWEL administered EpiPen and immediately transported her to the closest Emergency Department at Brandon Regional Medical Center. She arrived minutes after the start of the anaphylactic reaction as M.M. was a Code Blue. She was ultimately resuscitated and stabilized after vigorous CPR and at least 5 rounds of epinephrine. Unfortunately, M.M. not resuscitated before suffering severe anoxic brain injury leading to catastrophic hypoxic ischemic encephalopathy secondary to her severe anaphylactic reaction to ingesting goat's milk.

46.   Since May 27, 2019,         M.M.       ___ has experienced multiple months of hospitalization in intensive care and rehabilitation. She continues to suffer from catastrophic and life altering hypoxic brain injury, organ injury, and neurologic devastation that will persist for the rest of her life. She can no longer walk, speak, feed herself, or sit up on her own.         M.M.       ___ is cortically blind, and she is forever unable to perform the most basic functions that would be expected of a child her age.

47.   Due to the negligence described herein    M.M.       L is now a total care patient for life.  From the age of 2 until the present, and for the remainder of her life,       M.M.    ___ will forever require around the clock care for her neurologic devastation.  This neurologic devastation was directly and proximately caused by the negligence outlined herein.

48.   Further, as a direct and proximate result of the negligence outlined herein, ASHLEY MCDOWEL must provide around the clock total care for her daughter,      M.M.  _ ___. This has resulted in the loss of her employment from date of incident to present date as well as the other damages described in this Complaint.  Because of her obligation to take care of her daughter, ASHLEY MCDOWEL will remain unable to seek employment for the foreseeable future.

## CAUSE OF ACTION

*Medical Malpractice*

49.    Plaintiff incorporates by reference the allegations in all preceding paragraphs.

50.    At all times material, the Defendant, through its employees, staff, borrowed servants, and/or agents providing healthcare to **M.M.**                    , owed its patients, including        **M.M.**          , a duty to provide reasonable medical care within the level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as reasonable, acceptable, and appropriate by reasonably prudent similar health care providers.

51.    The acts and omissions alleged herein constitute breaches of that duty of care with respect to        **M.M.**          .

52.    At all times material, Defendant, through its employees, staff, borrowed servants, and/or agents providing healthcare to        **M.M.**          , including but not limited to United States Air Force; Robert Lewis, M.D.; James J. Tschudy, M.D.; Robert Gonzalez, D.O.; and the MacDill Air Force Base 6th Medical Group patient care staff and physicians was negligent and deviated from the standard of care, and breached its duties of care to **M.M.**              by the following actions and/or omissions:

A)   Failing to provide allergy and dietary education for the benefit of M.M. to ASHLEY MCDOWEL.

B)   Failing to obtain necessary and ongoing referrals for M.M. in a timely manner including but not limited to an allergist.

C)   Failing to enroll M.M. in EFMP, which would have afforded more resources and education to care for her multiple and varied food allergies.

D)   Instructing ASHLEY MCDOWEL that goat's milk was safe and appropriate for M.M., when they knew or should have known that goat's milk elicits an almost identical allergic response as cow's milk in most people who are allergic to cow's milk.

53.   As alleged herein, and as a result of the negligent acts and/or omission described herein, M.M. suffered a severe anaphylactic reaction with cardiac arrest leading to severe hypoxic brain injury, organ injury, blindness, and permanent neurologic devastation.

## DAMAGES

54.   As a direct and proximate result of the negligence described herein, Plaintiff, M.M. has suffered permanent and irreparable injuries

and resulting critical complications that wrongfully caused her to suffer the following past and future personal injuries and related damages for which she seeks full compensation under the law as follows:

A.    Pain and suffering.

B.    Mental and emotional anguish.

C.    Incapacity, disability, and disfigurement.

D.    Loss of the capacity to enjoy life.

E.    Inconvenience.

F.    Aggravation of a preexisting disease or condition.

G.    Medical bills and related expenses in seeking reasonable and appropriate nursing, attendant, and medical care and treatment for her injuries and resulting incapacity.

H.    lost future earnings and earning capacity.

        M.M. would not have suffered these damages but for the negligence of the Defendant.

55.    Plaintiff, ASHLEY MCDOWEL has suffered the loss of consortium of     M.M.     and related damages in the past and future for which she seeks full compensation under the law as follows:

A.    Pain and suffering.

B.    Mental and emotional anguish.

C.   Inconvenience.

D.   Medical bills and related expenses in seeking reasonable and appropriate nursing, attendant care, and medical care for M.M.'s injuries and resulting incapacity.

E.   Lost past and future earnings.

F.   The value of services that she must now provide to M.M. as a result of her injuries and resulting incapacity.

G.   The loss of M.M.'s services, comfort, attentions, love, companionship, society, affections, and solace.

ASHLEY MCDOWEL would not have suffered these damages but for the negligence of the Defendant.

## PRAYER FOR RELIEF

56.   WHEREFORE, the Plaintiffs M.M. and ASHLEY MCDOWEL are entitled to damages from THE UNITED STATES OF AMERICA, and they do hereby pray that judgment be entered in their favor and against THE UNITED STATES OF AMERICA as follows:

A.   Monetary relief as compensation for the economic and non-economic damages described in this Complaint.

B.   Attorney's fees and costs if awardable under the applicable law.

C.     Pre and Post judgment interest if awardable under the applicable

law.

D.     Such other relief as this Court deems just and proper.

Respectfully submitted,

Christa M. Carpenter, RN, Esq.
Fla. Bar No.: 089779
Eric P. Czelusta, BCS, Esq.
Fla. Bar 152315
Carpenter & Czelusta, PLLC
3411 Alternate 19, Suite A
Palm Harbor, FL 34683
727-281-4357/888-281-4356 (fax)
ccarpenter@patientslawfirm.com
eczelusta@patientslawfirm.com
eserve@patientslawfirm.com

By: */s/ Eric P. Czelusta*
        Eric P. Czelusta, BCS, Esq.

Attorneys for Plaintiffs